Our thanks to both counsel. And our final case this morning is United States v. Mancillas. Mr. Henderson. Good morning. May it please the court. I'm Peter Henderson. I represent Ruben Mancillas. I'd like to spend our brief time today on the crime of violence issue, although I'm certainly happy to answer questions on the Sixth Amendment as well. The crime of violence question is a categorical question that looks at the elements of an offense. We don't think about what cases ordinarily involve. We don't think about facts. The Supreme Court has made clear in a number of opinions this is an elements-based question. And so the elements of the Indiana offense are that somebody knowingly or intentionally, one, two, in a rude, angry, or insolent manner, three, obstructs the nose or mouth of another person, and four, does so in a manner that impedes the normal breathing of that person. Why doesn't that satisfy the definition of physical force established by the Johnson case, which is just force capable of causing physical pain or injury? If you obstruct somebody's breathing. Right. Well, it's not violent physical force. But that's been defined by Johnson as force capable of causing physical pain or injury, and impeding somebody's breathing or circulation is capable of causing pain or injury. But not necessarily. It's capable of. It doesn't have to actually produce that. And by doing either of these things in a manner that impedes the normal breathing or circulation seems to me to satisfy that definition, because it's at least intrinsically capable of causing physical pain or injury, even if it doesn't in a specific case. Right. But that would render the Johnson decision essentially irrelevant, because what the Johnson decision talks about is differentiating between nonviolent battery and violent battery. It's almost a contradiction in terms. It almost is, but we have this distinction, because what the court wants to avoid is a simple unwanted touch being considered a violent felony, even though that is a battery. And so, for example, throwing urine on somebody is a battery. It is not a violent battery, because it doesn't involve the application of violent physical force. We involve it eventually, but go ahead. That's precisely my point. I understand your point. That is capable of producing pain or injury. If you get it in somebody's eye or if somebody has a particular skin condition, that is capable of producing pain or injury. So we can't be limited by that language alone, otherwise Johnson goes away. I think this case is a lot like what the court referenced as a nonviolent battery in Evans, which was the unwanted kissing of somebody who doesn't want to be kissed. And that's, of course, you know. That's a senatorial privilege, you say. I was going to say it's been a feature in our national dialogue now for several months. And I think it's important because that's, according to our national dialogue, a very serious offense. I'm not standing here saying strangulation is not a serious offense or that it doesn't cause fear. That's very reassuring, Mr. Anderson. I'm happy to do that. Nonviolent strangulation is beyond. Right, but the circumstances. So the Smith case, for example, in the Indiana courts, the testimony from the victim was, I was on the ground, the person put a blanket over my face. That doesn't involve violence. That's not slapping somebody. That's not hitting somebody. That's placing a blanket over their face. And the victim specifically said, no, the person wasn't on me applying this blanket. The blanket was over my face, and it was getting harder for me to breathe. She still could breathe. You know, this wasn't causing her an injury or causing her pain. But she decided if she's having trouble breathing, she needs to get out from under this blanket, and so she did. And I think a response to that might be, well, you have to apply some sort of violent force to keep somebody under a blanket, or you have to apply some sort of violent force to kiss somebody against their will. And we know that those actions happen without violent force. The elements of this offense, not what most cases involve, but the elements of this offense merely involve obstructing the nose or mouth of some person. If you obstruct somebody's nose by placing your hand up to their nose, you are not violently assaulting them or battering them. It's an unwanted touch. It is a serious offense. Well, there's more to it than that. It's in a manner that impedes normal bleeding or circulation. So it has to be either long enough or forceful, you know, more than a touch to qualify under this statute. No, because it could be the duration. It doesn't have to be the violence of the force that's employed. It could be the duration. That's the blanket example. And the other thing is, too, the Indiana courts, you know, if the Indiana court said to impede the normal breathing of a person, you have to apply enough force so that they can't get out from under it or, you know, that their breathing stops or something like that, then we have a different question because the state would have to prove beyond a reasonable doubt that there was that much force involved. That's what the categorical approach asks is, what does the state have to prove beyond a reasonable doubt? And you can impede the normal breathing of a person by placing a blanket in a nonviolent manner over their face and keeping them under that blanket for a duration of time. Again, the question is not what force is used. And I go back to that unwanted kissing. One of the questions that has come up in our dialogue is, well, why didn't the women resist or push back? Or certainly that wouldn't happen unless you used force. And our experience has been, no, actually the fear that is involved, the psychological resistance, doesn't always manifest itself as physical resistance. This sort of statute criminalizes an act that is offensive, not only because it has the potential for some sort of injury or pain. It doesn't require that, but it has the potential for that, but also the potential for psychological injury. And that's not violent force. It's psychological force. On the Faretta claim, if we could spend just a moment on that, was the defendant's motion for a continuance sufficiently unequivocal about his desire to fire Mr. Donahue or Donahoe, I guess it is, and proceed pro se to trigger a Faretta hearing? No, it wasn't. What triggered the Faretta hearing was the unequivocal statements at the beginning of the sentencing hearing from both the lawyer and Mr. Mancius. The lawyer said he wants to represent himself, and Mr. Mancius then told the district court, so you're denying my motion or my request to proceed pro se. Those are unequivocal statements. Now, if the district court had then inquired and engaged in some sort of colloquy, even if it's short of a Faretta colloquy, and said, well, I know you want to present this issue, but if you go pro se, it's all or nothing. You can either let your lawyer handle this issue and handle everything else, or you have to handle everything else, maybe then we'd have equivocations, like we see in some of the cases that the government cites. But the point is there wasn't that colloquy. And so all we have is an unequivocal statement that I want to proceed pro se, you're denying my request to proceed pro se, and an unequivocal statement from the lawyer that he wants to represent himself. And I think those are unequivocal to trigger a hearing. What's the remedy you're asking for? The remedy would be a resentencing at which Mr. Mancius would be able to elect to proceed pro se. Obviously, I think a resentencing is warranted on the crime of violence issue as well. You say what? I think a resentencing is warranted on both issues. But I think that certainly a resentencing, the remedy for a violation of the Sixth Amendment right to represent yourself is to allow you to represent yourself. That's why it's not a mental illness. At sentencing? Harmless error. At sentencing. That's right. I'll save the one minute I have for whether. That's fine. Mr. Wood. Your Honors, Bob Wood on behalf of the government. With permission, I'd like to pick up really quickly on the idea of a pre-foreta colloquy colloquy. I think something I didn't mention in my brief but that has occurred to me is that there's a danger there of denigrating the right to counsel. If the district courts are probing equivocal invocations of the right to proceed pro se, they might push more defendants to represent themselves. And I don't see any case, I've never read any dicta that would find that to be a good thing, especially given the constitutional primacy of the right to counsel. Right. The two rights are obviously in tension. That's inherent in foreta. But the basic question is whether this request was unequivocal enough to trigger the foreta duty. Sure. And the motion was not. That was just a continuance motion. But what about the colloquy as it transpired at sentencing on this issue? So at sentencing, the way he started, maybe the best way to look at this is to say at the very end was when he used the words pro se. And I can agree with Peter that that's the clearest piece we have here. But he was talking about my request to proceed pro se. So what was that? Earlier in the hearing he said, I would like to sit down with my attorney and go over the transcript so that I can present a specific argument. That's both confusing in the sense that he's not saying he wants to dispense with the benefits of counsel, which is really what you have to say to be unequivocal about these things, but he's also clearly catching it in strategic terms. And a lot of times defendants want to proceed pro se for strategic reasons, but if it's both strategic and it clearly doesn't articulate a desire to dispense with the benefits of counsel, then it's definitely equivocal. So then really in my mind the only question here is, and also on his attorney, Mr. Donahoe's statement that he wants to proceed pro se, he said, I think he wants to proceed pro se so that he can play those calls. Again, it's strategic. It's hedged. Does it call for the district court to jump in and say, well, now, sounds to me like you want to proceed pro se. Do you want to do that? I would just say maybe that superficially sounds reasonable, but it would probably encourage defendants to say, you're darn right I do. I want to represent myself. But in any event, I think you have to find that all the context leading up to that, in which he regularly disagreed with everyone about all kinds of things openly, but always, it's not about the fact that he disturbed the proceedings, it's that he did that while at the same time always relying on his attorney and always falling back on his attorney's advice. So I think it was not an abuse of discretion at the very least for the district court to see this as part of that same pattern. And that's why the abuse of discretion standard is important in this context because or when applying this law because the context really matters a lot. The facts on the ground matter a lot as to how Mr. Mincius was conducting himself to determine whether this was equivocal. Well, and the request seemed to be couched or contingent upon winning a continuance as well so that he could get those calls before the court and evidently another witness, somebody named Rothermitch. Yeah, that's a case agent who was ill that day. And courts have said that pairing it with the request for a continuance, several courts have said that suggests equivocation. And so I would say that just goes further to supporting the notion that at the very least, this was not an abuse of discretion, not to probe, even if you don't get into the problems of a rule about probing. It wasn't an abuse of discretion. And on the crime of violence issue, I would say a couple of things. Simple unwanted touching, there's no example in their brief, I couldn't find anything, of that being prosecutable as strangulation in Indiana. The best case for them, again we agree on this, is the blanket case. Fifteen seconds of someone in a heated argument, which is what this case was, of someone pressing a blanket down or holding, I don't know what the difference is, a blanket down over your face, I would imagine given that she pressed charges, she was resisting. If she wasn't, it's hard for me, I mean, it changes something violent into something comical. I can't imagine what she was doing, but it sounds like a scary situation. And if it was harder for her to breathe, I don't think we should minimize what that means for someone else to make it harder for you to breathe. It's not going in a sauna and having high humidity, it's covering your mouth with something, whether it's a blanket or your hand or covering your throat. It's suffocation. That's what's incorporated into this definition of strangulation. And it's per se a bodily injury under the statutory definition in Indiana law, which is the same as the Eighth Circuit Paro decision of impairment of any physical condition. And you can quarrel with whether that's a bodily injury, but at the very least, under Indiana law, they're tracking the bodily injury with the strangulation statute pretty directly. Unless there are other... Well, it seems when the charge, somebody's going to charge strangulation, I mean, there has to be some reason for doing that. And it can't just be because somebody's giving somebody a big hug. Right, and that's the only point I was making with ordinary cases. The word is... Strangulation, yeah. It can be more shocking than the actual fact. But that's why you've got to start with finding out exactly what happened. And we've got strangulation, and that's all there is to it. That's right. And there aren't too many prosecutions for this, from my research, compared to other crimes. It's not that common to actually prosecute someone in Indiana for strangulation. And I would just add, I get the debate over ordinary cases still ongoing, but this is a Beckles territory where the ordinary case debates over vagueness challenges based on the Constitution. There's no need for the court to get into whether or not ordinary case would apply. Vagueness challenges are irrelevant here. So even if it may have been sloppy, worrying on my part, I don't see that there's any need to get into that, especially in plainer review where we're just talking about whether it's obvious that strangulation is not violent. Thank you, Your Honor. Thank you. Mr. Henderson. You have 30 seconds left. Let's see you use it. I'll try to be brief, Your Honor. There is no bodily injury requirement under Indiana law. I don't know where that comes from. It's not in the elements of the statute. In Iowa, in the Pero case, there is. You have to commit an assault that involves strangulation. In Indiana, it's a stand-alone offense. Now, it may never be prosecuted under my hypothetical, but that's not my burden. And I can imagine situations, if the governor of Indiana is walking on a public place and somebody puts a plastic bag over his head, that will impede his breathing, it will obstruct his mouth, and I expect authorities would take that quite seriously. That doesn't involve violent force. That would be prosecutable as a felony in Indiana, because unlike these other states where this strangulation has been considered, there's no requirement of assault. There's no requirement of actually causing bodily injury. There's no requirement of inflicting bodily injury. So for those reasons, we'd ask to vacate the sentence and remand. Thank you. Thank you. Our thanks to both counsel. The case is taken under advisement, and that completes today's calendar. The court is in recess.